2000 ME 85

**Kevin J. COLLINS**

**v.**

**STATE of Maine.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 29, 2000.

Decided May 16, 2000.

Calkins, J., filed a concurring opinion in which Dana, J., joined.

Kevin J. Collins, Thomaston, for plaintiff.

Andrew Ketterer, Attorney General, Christopher C. Taub, Asst. Attorney General, Paul Stern, Deputy Attorney General, Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Kevin J. Collins appeals from the judgment entered in the Superior Court (Knox County, *Marsano, J.*) dismissing his declaratory judgment action seeking a declaration that 4 M.R.S.A. §§ 1606(2), 1610-A (Supp.1999) are violative of the Maine Constitution, article IX, section 14,[1] and

---

1. The relevant portion of Section 1606(2) reads:

 **2. Limitation on securities issued.**

 . . . .

 Nothing in this chapter may be construed to authorize the authority to issue securities to fund the construction, reconstruction, purchase or acquisition of facilities without a majority vote of approval in each House of the Legislature.

4 M.R.S.A. § 1606(2) (Supp.1999). Section 1610-A reads in full:

 **§ 1610-A. Additional securities**

Notwithstanding any limitation on the amount of securities that may be issued pursuant to section 1606, subsection 2, the authority may issue additional securities in an amount not to exceed $85,000,000 outstanding at any one time for correctional facilities.

enjoining the issuance of $85 million of bonds authorized by those Laws. On the motion of the State, the court dismissed the action with prejudice. We affirm the judgment. Collins lacks standing to assert his challenge.

## I. FACTS & STANDARD OF REVIEW

[¶ 2] Maine Court Facilities Authority was created in 1987, *see* P.L.1987, ch. 438, § 1, as a quasi-governmental agency to undertake the construction and renovation of court facilities. Ten years later, the Authority's mission was extended to all governmental facilities and its name changed to the Maine Governmental Facilities Authority (Authority or MGFA). *See* 4 M.R.S.A. §§ 1601–1603 (1989 & Supp. 1999). Since its founding, the Authority has been authorized "to borrow money and to issue negotiable securities." 4 M.R.S.A. § 1604(10) (1989).[2] The Authority uses the proceeds of these securities to finance construction projects, and the structures thus built are leased to the State. Rental payments to the MGFA by the State are expressly conditioned on the passage of subsequent legislative appropriations. If the Legislature fails to appropriate the money to pay the rent, the Authority would be unable to fulfill its obligation to security holders. The State is not obligated in any way on the bonds issued by the Authority.

[¶ 3] Collins, a prisoner at the Maine State Prison, is concerned with the State's use of MGFA bond proceeds to finance the construction of a new prison facility. Collins asserts that he has standing as "a State Tax Payer, a State Citizen, and is affected by the actions, failure and/or refusal to act [of the State]." He additionally asserts that the Crafts Program he now participates in at the Maine State Prison will be unavailable at the new prison being built with the funds generated from the sale of the bonds in question. He asserts that the Crafts activity enables him to earn thousands of dollars every year and further that his "personal liberties will be severely curtailed" at the new prison for he will not have access to a music room, a distressing turn of events for Collins who styles himself as "an aspiring musician."

[¶ 4] Review of a dismissal pursuant to M.R. Civ. P. 12(b)(6) accepts the facts as presented in the complaint as true. *See Bowen v. Eastman,* 645 A.2d 5, 6

---

4 M.R.S.A. § 1610–A (Supp.1999). The relevant part of the applicable section of the Maine Constitution reads:

> **Section 14.** The credit of the State shall not be directly or indirectly loaned in any case, except as provided in sections 14–A, 14–B, 14–C and 14–D. The Legislature shall not create any debt or debts, liability or liabilities, on behalf of the State, which shall singly, or in the aggregate, with previous debts and liabilities hereafter incurred at any one time, exceed $2,000,000, except to suppress insurrection, to repel invasion, or for purposes of war, and except for temporary loans to be paid out of money raised by taxation during the fiscal year in which they are made; and excepting also that whenever ⅔ of both Houses shall deem it necessary, by proper enactment ratified by a majority of the electors voting thereon at a general or special election, the Legislature may authorize the issuance of bonds on behalf of the State at such times and in such amounts and for such purposes as approved by such action; ....

ME. CONST. art. IX, § 14.

2. The relevant portions of this section read:

> **§ 1604. Powers**
> In order to carry out the purposes of this Act, the Maine Governmental Facilities Authority has the following powers with respect to project, projects or part of any project together with all powers incidental to those powers or necessary for the performance of the following:
> . . .
> **10. Provide for financing or refinancing.** To provide financing for any project, projects or part of any project or to provide for refinancing of existing indebtedness, and, for the financing of the project, projects or part of any project and of other necessary and usual attendant facilities, to borrow money and to issue negotiable securities and to provide for the rights of the holders of those securities; ....

4 M.R.S.A. § 1604(10) (1989).

(Me.1994). "Nevertheless, we are not bound to accept the complaint's legal conclusions." *Id.* (citing *Robinson v. Washington County*, 529 A.2d 1357, 1359 (Me. 1987)). Nor do we have to accept the Superior Court's decisions of law that buttress a dismissal under Rule 12(b)(6); these are reviewed de novo. *See State v. O'Connor*, 681 A.2d 475, 476 (Me.1996).

## II. STANDING

[¶ 5] We have established general standing rules for litigants seeking to challenge the validity of a statute. Although we have declined to use a label to describe these rules, we have stated:

> While standing is an amorphous concept fraught with a plurality of meanings, its basic purpose and requirements are clear. A party must assert a personal stake in the outcome of the litigation and present a real and substantial controversy touching on the legal relations of parties with adverse legal interests.

*Franklin Property Trust v. Foresite, Inc.*, 438 A.2d 218, 220 (Me.1981) (internal citations omitted). To have standing to challenge a statute's validity, "a party must actually be deprived of a constitutional right by the operation of the statute." *State v. York*, 1997 ME 209, 704 A.2d 324 (citing *Brann v. State*, 424 A.2d, 699, 702 (Me.1981)). We can raise the issue of standing *sua sponte* as it is jurisdictional. *See Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1312 (Me.1987).

### A. Traditional Standing

[¶ 6] One who suffers only an abstract injury does not gain standing to challenge governmental conduct. *See Nichols v. City of Rockland*, 324 A.2d 295, 297 (Me.1974). To have standing, a party must show they suffered an injury that is fairly traceable to the challenged action and that is likely to be redressed by the judicial relief sought. *See Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (cited with approval in *Proctor v. County of Penobscot*, 651 A.2d 355, 357

(Me.1994)). Further, the injury must be particularized. Put differently, it must be distinct from the harm suffered by the public-at-large. *See Stull v. First American Title Ins. Co.*, 2000 ME 21, ¶ 11, 745 A.2d 975, 979; *Proctor*, 651 A.2d at 357. This requirement is met when defendant's actions have "adversely and directly affected the plaintiff's property, pecuniary or personal rights." *Stull*, ¶ 11, 745 A.2d at 979.

[¶ 7] Under this traditional doctrine, Collins does not have standing because he does not allege, nor does he demonstrate, that he was injured. Collins merely claims that he is "affected" by defendant's action. Being affected by a governmental action is insufficient to confer standing in the absence of any showing that the effect is an injury. Although Collins claims that the new prison facility may not allow him to continue to participate in a Crafts Program or to have access to a music room, he is, however, in the custody of the Department of Corrections and he has no constitutional right to the program and facility which he claims he may now be deprived of. *See Parkinson v. State*, 558 A.2d 361, 363–64 (Me.1989); *Duncan v. Ulmer*, 159 Me. 266, 275, 191 A.2d 617, 622 (1963).

### B. Tax Payer Standing and *Common Cause v. State*.

[¶ 8] Collins suggests two possible bases for asserting standing due to his taxpayer status: as an income taxpayer and as a sales taxpayer. In *Common Cause v. State*, 455 A.2d 1, 10 (Me.1983), we allowed income taxpayers to challenge state action even without showing special injury to themselves. The facts in *Common Cause* differed markedly from the facts of this case, however. First and foremost, *Common Cause* involved the issuance of general obligation bonds; bonds upon which the State was liable. In *Common Cause*, the plaintiffs contended that the challenged law violated the equal protection clauses of the State and Federal Constitutions. *See*

*id.* at 6. We indicated that, "the general rule is that a litigant may not assert constitutional rights of third parties." *Id.* (citing *Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality op.)). We therefore declined to consider the plaintiff's equal protection claim as they were third parties. In *Common Cause,* the plaintiffs further argued that the Legislature may not authorize the issuance of general obligation bonds except for a public purpose and that the proposed action by the State illegally violated that rule. *See id.* at 8. We agreed and rejected the proposition that taxpayers without special injury may never have standing to challenge *illegal* State action. We stated:

> [I]ndeed, the plaintiffs, as taxpayers, assert their own direct interest in the enforcement of a provision of the Maine Constitution which, as construed by this Court, is aimed precisely at protecting taxpayers from having their tax dollars used for private purposes. The plaintiffs assert also a direct interest in the enforcement of a constitutional provision designed to prevent the state from becoming overburdened with debt. Again, the taxpayers of the state are surely among the principal intended beneficiaries of that provision.

*Id.* at 10.

[¶ 9] The revenue bond issue that Collins challenges is not backed by the full faith credit of the State of Maine. If he earns income, he must pay income tax. *See Maine State Housing Auth. v. Depositors Trust Co.,* 278 A.2d 699, 706–08 (Me. 1971). Collins' income tax payments will not directly help finance MGFA's bond issue as the debt will be serviced by the Authority and not by the State. So unlike the plaintiffs in *Common Cause,* Collins alleges only a "violation of a statute or constitutional provision having little or no direct connection with [his] tax liability." *Common Cause,* 455 A.2d at 10. At the time, we noted that our holding in *Common Cause* "intimate[s] no opinion about the standing of taxpayers without special injury to bring a suit of that sort." *Id.* Here, Collins has not shown a connection between the asserted statutory violation by the State and his taxes because Collins's tax dollars do not directly pay the bond debt. Therefore, Collins does not have income taxpayer standing.

[¶ 10] Collins explicitly asserts that he has paid sales tax, but, as the South Dakota Supreme Court points out, payment of sales tax by a consumer "does not fit within the definition of a taxpayer" for taxpayer standing purposes. *Stumes v. Bloomberg,* 551 N.W.2d 590, 593 (S.D. 1996). *See also Cornelius v. Los Angeles County Metro. Transp. Auth.,* 49 Cal. App.4th 1761, 57 Cal.Rptr.2d 618, 626–29 (1996). In Maine, as in South Dakota and California, the retailer pays the sales tax, and can choose to pass that cost on to the consumer. *See Harvey F. Gamage, Shipbuilder, Inc. v. Halperin,* 359 A.2d 72, 76–77 (Me.1976) (holding that the legal incidence of the sales tax is on the retailer and not the consumer, notwithstanding the language of 36 M.R.S.A. § 1753 (1990) which says sales tax is a levy on the consumer). His reimbursement of the retailer's sales tax cannot alone avail Collins of standing.

The entry is:

Judgment affirmed.

CALKINS, J., with whom DANA, J., joins, concurring.

[¶ 11] I would not reach the standing issue, and I would affirm the Superior Court's dismissal on the merits. While I agree that we can raise the issue of standing *sua sponte* as we have done here, I do not believe that we should reach to dispose of a case on standing where the merits are more easily determined than standing. Our standing jurisprudence is prudential, rather than constitutional. *See Seven Islands Land Co. v. Maine Land Use Reg. Comm'n,* 450 A.2d 475, 484 (Me.1982) (Nichols and Wathen, JJ., concurring). We are not required to determine standing. I would decide the merits because

the standing issue is a close one, the record is minimal, standing was not raised by the parties, we do not have the benefit of the Superior Court's conclusion on standing, and the decision on the merits is clear.

[¶ 12] On the merits, Collins seeks a declaration that 4 M.R.S.A. § 1610–A (Supp.1999) which authorized the issuance of additional securities for the construction of correctional facilities is invalid because it violates the debt limitation of Article IX, Section 14 of the Maine Constitution. The statutory scheme creating the MGFA and defining its powers and limitations is similar to the statutory scheme at issue in *Maine State Hous. Auth. v. Depositors Trust Co.*, 278 A.2d 699, 706–07 (Me.1971), in which we held that the issuance of securities of the Housing Authority did not violate the Maine Constitution. Securities issued by the MGFA are not a debt of the State, and the credit of the State is not pledged to pay the securities or interest thereon. *See* 4 M.R.S.A. § 1618 (Supp. 1999). While the State pays rent to the MGFA to use the facilities it has constructed, that rent is expressly contingent on legislative appropriations. *See* 4 M.R.S.A. § 1604(18) (Supp.1999). Because the State is under no legal obligation to pay MGFA's debt, the Maine Constitution does not bar MGFA from issuing bonds in excess of $2 million. *Cf. Maine State Hous. Auth.*, 278 A.2d at 706–08.

[¶ 13] Collins also asserts that section 1610–A was enacted improperly because it has not been shown that it passed with a two-thirds majority of the Legislature. Maine follows the enrolled bill rule that prevents parties from challenging the process by which bills become law and deems that bills, which are duly certified as having been passed by the Legislature and approved by the Governor, cannot be impeached by the showing of any irregularity in the passage. *See Weeks v. Smith*, 81 Me. 538, 547, 18 A. 325, 327 (1889); *see also Twin City Nat'l Bank of New Brighton v. Nebecker*, 167 U.S. 196, 201, 17 S.Ct. 766, 42 L.Ed. 134 (1897). Therefore, Collins's attack on the manner of enactment of the statute fails.

[¶ 14] For these reasons, I would affirm the judgment of the Superior Court dismissing Collins's complaint for failure to state a claim. *See* M.R. Civ. P. 12(b)(6).