STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-280
CV-06-369
GAR -YOR - 0/22/2007

PATRICIA R. MONROE, et al.,

    Plaintiffs

v.

**ORDER**

TAMMY M. LAVALLEE, et al.,

    Defendants

This matter comes before the Court on Tammy Allard's motion for summary judgment and Wells Fargo's motion for summary judgment pursuant to M.R. Civ. P. 56(c), as well as motions to consolidate filed by Patricia Monroe and the Estate of Phyllis Ring.

## BACKGROUND

Plaintiff Patricia Monroe ("Monroe") is a Kentucky resident. Defendant Tammy LaVallee, n/k/a Tammy Allard ("Allard"), is a resident of York County, Maine and is Trustee of the Moody Lane Trust. The Inhabitants of the Town of York are alleged to be parties-in-interest, as are Wells Fargo Bank and Northeast Credit Union.

This case involves the estate of Phyllis Ring ("Ring"), who passed away in April 2001 at the age of 92. Ring's health had declined following several strokes in 1991 and 1998, which led to other health concerns. Monroe is Ring's daughter and only legal heir; however, in a March 1999 will, Ring devised her entire estate to her then-caretaker, Tammy LaVallee n/k/a Tammy Allard. She affirmed this devise in codicil dated August 18, 1999. When Ring died and the Oxford County Probate Court evaluated her will, the court determined that the will resulted from undue influence by Allard and

disallowed it.[1] On appeal, the Law Court affirmed that decision, and it denied Allard's motion for reconsideration in December 2004.

In December 2005, Gertrude Bourque ("Bourque"), a cousin of Ring's, filed a petition to probate a 1994 will allegedly written by Ring, leaving everything to Bourque. The 1994 will intentionally omits Monroe. Monroe filed an appearance to object to the filing of the 1994 will as untimely. A final hearing was held in Oxford County on June 21, 2006, but no decision has been rendered. Bourque died in January 2006, and her husband and sole heir died in July 2006, survived by his children, five of whom would be devisees of the 1994 will if it were probated.

Monroe, as Ring's sole heir at law, filed this lawsuit against Allard in August 2006 (CV06-280) to challenge the validity of three deeds from Ring to Allard individually and as Trustee of the Moody Lane Trust, all of which were dated November 3, 2000.[2] Allegedly, Monroe had had an interest in the York properties involved. After suffering her first stroke, Ring apparently sued her to remove her name from the deeds.[3] Once Ring owned the property outright, she transferred it all to Allard via the 2000 deeds. This Court granted an attachment to prevent Allard from conveying any of the subject property. Monroe claims that Allard also converted other property of Ring's, including an account valued at $61,541.94, committing a breach of fiduciary duty. Her other allegations include fraud, undue influence, waste, abuse of fiduciary

---

[1] The case was transferred from York County to Oxford County because Judge Nadeau had a conflict of interest. The Oxford Court rendered its decision in December 2003 following a hearing that lasted several days. *See Estate of Phyllis Ring*, Docket # 1992-0172(2).

[2] Deed 1 was from Ring to Tammy LaVallee, recorded in York County Registry of Deeds at Deed Book 10304, Page 161. Deed 2 was from Ring to LaVallee as Trustee of Moody Lane Trust, recorded at Deed Book 10304, Page 163. Deed 3 was from Ring to LaVallee in her capacity as Trustee, recorded at Deed Book 10304, Page 164.

[3] The properties have been referred to as a "family compound" and are located at 24 Webber Road and 65 Garrison Avenue.

2

relationship, and violation of the Improvident Transfers Act. Monroe seeks damages, a declaratory judgment invalidating the deeds, and a transfer of the property back to the Estate of Phyllis Ring ("the Estate").

The Estate filed a lawsuit against Allard in this Court in November 2006 (CV06-369). That action contains similar substantive allegations, but was filed by the Estate on behalf of the beneficiaries of the 1994 will. Monroe and the Estate have moved to consolidate the lawsuits, and Allard opposes consolidation. In addition, Monroe and the Estate made a separate agreement by which they have decided to pursue litigation jointly and split any damages awarded according to their agreement. Allard now moves for summary judgment, contending that before any lawsuit can proceed, a decision of the probate court is necessary to determine who the proper plaintiff(s) should be. Monroe and the Estate oppose the motion for summary judgment, contending that this action can proceed despite the probate proceeding.

In addition, Wells Fargo Bank filed a counterclaim for declaratory judgment and now moves for summary judgment. In October 2003, Allard executed a promissory note, secured by a $300,000 mortgage on the Webber Road property, in favor of Wells Fargo.[4] Wells Fargo's attorney conducted a title search that did not reveal that the Estate or any other party had a claim against the property. It argues that under Maine's Improvident Transfer law, its status is protected despite the disputed ownership of the property. Monroe and the Estate contend that there are genuine issues of material fact that would preclude summary judgment for Wells Fargo.

---

[4]      This note and mortgage are recorded at Deed Book 13558, Page 275.

## DISCUSSION

### 1. Motion to Consolidate.

First, Monroe moves to consolidate this case with the lawsuit filed by the Estate, and the Estate has made the same motion.[5] A court may consolidate two civil actions when they involve "a common question of law or fact." M.R. Civ. P. 42(a). Here, Monroe and the Estate contend that they both have an interest in the prompt resolution of this matter and that the legal questions and facts underlying the cases virtually are the same. They have entered into an agreement that they will pursue the litigation against Allard jointly and would split any damages award in accordance with that agreement.

Allard concedes that the allegations against her are substantively the same in both cases. She opposes consolidation, however, because she contends that only one of the plaintiffs has the right to sue her, and the identity of that plaintiff depends on the probate court's decision regarding the 1994 will. Yet, the probate court's decision should not affect consolidation in this case because, as will be discussed below, the plaintiffs in both suits have an interest, independent of the 1994 will, in pursuing Allard for her actions and in protecting the Estate's assets. The motion for consolidation due to the plaintiffs' agreement and the significant substantive similarities between the cases is Granted.

### 2. Summary Judgment Standard.

"Summary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21. The purpose of summary judgment is to reach "judicial resolution of those matters that may be decided without fact-finding." *Id.* ¶ 7, 784 A.2d at 22. Summary judgment is proper where there exist no genuine issues of material fact

---

[5] Wells Fargo and Northeast Credit Union do not oppose the motions to consolidate.

4

such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 3. Allard's Motion for Summary Judgment.

Allard argues that because the Oxford County Probate Court has not yet rendered a decision regarding the validity of the 1994 will, the identity of the plaintiff(s) who have standing to sue Allard may not yet be determined. She contends that if the 1994 will is valid, the Estate (the Bourque children) has standing to sue her, but if it is invalid, Monroe has standing as Ring's sole heir at law. Although her motion is styled as a motion for summary judgment, Allard essentially seeks dismissal of both cases until the probate court has issued a decision. Monroe and the Estate argue that they both have standing to proceed and that a ripe, justiciable controversy exists regardless of the probate court's determination.

In order to have standing to bring a claim, a plaintiff must demonstrate that he or she "suffered an injury that is fairly traceable to the challenged action and that is likely to be redressed by the judicial relief sought." *Collins v. State*, 2000 ME 85, ¶ 6, 750 A.2d 1257, 1260. For example, standing exists where a "defendant's actions have adversely and directly affected the plaintiff's property, pecuniary or personal rights." *Id.* (internal quotations omitted).

5

Here, it is clear that both Monroe and the Estate have standing. Assuming the facts Monroe has alleged more favorably for purposes of deciding this motion, Allard's actions may have deprived her of her interest in Ring's York Beach property. At the time that Ring sued to remove Monroe from those deeds, Allard was serving as her caretaker. When the probate court decided that the 1999 will was invalid, it made numerous findings of fact regarding the variety of ways in which Allard manipulated and isolated Ring, amounting to undue influence by a clear and convincing evidence standard. These facts support Monroe's allegations that Allard interfered with her property transfer and may have exerted undue influence on Ring just one year after the will was written to execute the three deeds. This is a clear injury capable of redress by the courts, affording Monroe standing.

Similarly, Ring's Estate is directly affected by Allard's alleged conversion of estate property. Regardless of whether the identity of the ultimate beneficiary is determined by will or by statute, the Estate has suffered a reduction in value as a result of the deeds transferring property to Allard. This loss also is capable of redress by this Court, giving the Estate standing to sue.

Allard also invokes another justiciability doctrine, ripeness, to argue that this Court cannot yet become involved in these cases. "Courts can only decide cases before them that involve justiciable controversies," meaning that cases must represent a debatable issue that is "real and substantial" and capable of resolution by a final judgment of the court. *Lewiston Daily Sun v. School Admin. Dist. No. 43*, 1999 ME 143, ¶ 12, 738 A.2d 1239, 1242 (citations omitted). When a live controversy involving an "immediate legal problem" exists, a case is said to be ripe for review. *Johnson v. City of Augusta*, 2006 ME 92, ¶ 7, 902 A.2d 855, 857.

6

In this case, although the validity of the will to Allard has already been determined, and the validity of the 1994 will has yet to be determined, there remains a live controversy regarding property transfers outside the will. Those transfers may have interfered with Monroe's property rights and/or removed property that otherwise could have been included in the Estate. In light of these ongoing claims against Allard, which involve "real and substantial" issues and a number of viable legal theories that do not implicate the will, both cases are ripe and satisfy the test for justiciability. Accordingly, Allard's summary judgment motion in both cases is Denied.

### 4. Wells Fargo's Motion for Summary Judgment.

Wells Fargo seeks a declaratory judgment that its mortgage interest is valid because it is a purchaser for value without notice of any competing claims. Monroe and the Estate contend that although the existence of Allard's mortgage is not in debate, genuine issues of material fact remain regarding the ownership of the subject property that might have an effect on the validity of the mortgage. They aver that no discovery has occurred on any of those pertinent facts and that, under M.R. Civ. P. 56(f), further affidavits and other discovery are needed before a decision may be made about the mortgage. Also, the Estate points out that the note and mortgage were executed just two months before the probate court invalidated the will favoring Allard.

Maine's Improvident Transfers of Title Act governs disputed transfers involving dependent, elderly persons. *See* 33 M.R.S.A. § 1021 (2005). The Act provides that if a property transfer is determined by a court to have resulted from undue influence, available remedies include "rescission or reformation of a deed or other instrument, the imposition of a constructive trust, or an order enjoining use" of the property or requiring its return. *Id.* § 1021(2). The Act clearly states, however, that:

7

No relief obtained or granted under this section may in any way affect or limit the right, title and interest of good faith purchasers, mortgagees, holders of security interests, or other third parties who obtain an interest in the transferred property for value after its transfer from the elderly dependent person. No relief obtained or granted under this section may affect any mortgage deed to the extent of value given by the mortgage.

*Id. See also First Union Natl. Bank v. Curtis*, 2005 ME 108, ¶ 12, 882 A.2d 796, 799

(affirming that the goal of the Act is to safeguard security interests).

Based upon this provision, Wells Fargo contends that its mortgage is still valid, despite the ongoing dispute about ownership of the Webber Road property. It gave value for the mortgage, disbursing the proceeds into an attorney trust account. The proceeds were then disbursed to pay closing costs and satisfy liens, and the balance went to Allard. The attorney who conducted the title search provided an affidavit declaring that there was no notice of disputed ownership before the bank agreed to loan Allard the money. It is unclear what other information could override the clear statutory provision to invalidate the mortgage. However, prudence dictates that action be deferred on Wells Fargo's motion so that further discovery can be undertaken. The motion will then be rescheduled.

## CONCLUSION

The motions to consolidate are granted and these actions are consolidated for trial.

Ms. Allard's motion for summary judgment is Denied.

Action on Wells-Fargo's Motion for summary judgment is deferred pending completion of discovery.

Dated:    May 22, 2007

David Ott, Esq. & Gregory Orso, Esq. - PL (CV-06-280) Patricia Monroe
Patrick Bedard, Esq. - DEF (CV-06-280 & CV-06-369) Tammy Allard et al
Chris Dinan, Esq. & Zachary Greenfield, Esq. - PII
(CV-06-280 & CV-06-369) Wells Fargo Bank NA
Susan Thibeau, Esq. - PII (CV-06-280 & CV-06-369)
Northeast Credit Union
David Q. Whittier, Esq. - PL (CV-06-369) Est. of Phyllis Ring et als

G. Arthur Brennan
Justice, Superior Court

8