268-10

STATE OF MAINE                    SUPERIOR COURT
WALDO, SS.                        CIVIL ACTION


Harlan Ivan McLaughlin,
    Plaintiff


    v.                        (AP-09-3)


Maine Department of Transportation,
    Defendant

........................................................

Douglas H. Watts,
    Plaintiff


    v.                        (AP-09-4)


Maine Department of Transportation,
    Defendant

........................................................

Ronald C. Huber,
    Plaintiff


    v.                        (AP-09-5)


Maine Department of Transportation,
    Defendant



## ORDER (MOTION TO DISMISS)

These three actions, which originated in Kennebec, Knox and Waldo counties, have been consolidated for procedural purposes, although they remain separate actions to

1

allow for consideration of any material differences among them. The plaintiffs each assert similar claims for relief, challenging the issuance of an executive order affecting the use of land located on Sears Island in Searsport. By authority ostensibly created through that executive order, the defendant Maine Department of Transportation conveyed a conservation easement protecting approximately 600 acres of land on Sears Island to the Maine Coast Heritage Trust. Under the executive order, the residual land on the island, which amounts to more than 300 acres, was made subject to future development related to transportation. The plaintiffs each contend that this disposition of the land violates several statutory provisions, that the delegation of enforcement responsibilities to the Maine Department of Environmental Protection is improper because of a conflict of interest with DOT, and that the transactions were affected by an unconstitutional violation of the separation of branches of government.

In response to the plaintiffs' complaints, DOT has moved to dismiss the claims. These motions are the ones at bar. DOT's motions in the three actions are supported by similar arguments. In one of those arguments, DOT contends that the plaintiffs lack standing to pursue the claims set out in their complaints. For the reasons set out below, the court agrees that the plaintiffs lack standing and dismisses the complaints.

Sears Island is owned by the state of Maine. In an executive order that became effective on January 22, 2009, Governor John E. Baldacci implemented recommendations for the use of Sears Island as approved by the Legislature's Joint Standing Committee on Transportation.[1] The order directs DOT to fix the boundary line on the island, separating a 601-acre conservation parcel (the "Protected Property") from a 330-acre parcel (the "Transportation Parcel"). The general location of that boundary previously had been determined by the Joint Committee. DOT was directed to then convey a conservation easement encumbering the Protected Property to the Maine Coast Heritage Trust. The Tranportation Parcel would be reserved for "future transportation

---

[1] The full text of the executive order, Me. Exec. Order No. 24 PY08/09 (January 22, 2009) is not included in the pleadings. However, the plaintiffs quote portions of the order and otherwise make reference to it. The court therefore considers the order in its entirety. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43, 48. The full text of the order is found at http://mobile.maine.gov.news/?sid=67081.

2

use," including a marine transportation facility. With respect to the Transportation Parcel, DOT was then charged with the following task, to be initiated following the conveyance of the conservation easement:

> [to] actively and aggressively work with the Maine Port Authority and other interested parties to initiate the process of marketing and development of a cargo/container port on Mack Point and Sears Island in accordance with the Agreement including initiating a request for proposals for a cargo/container port facility which will utilize environmentally-responsible technologies to minimize impact to natural resources, cultural values and existing marine activities while creating significant economic opportunity for the citizens of the State of Maine.

The plaintiffs challenge the legality and enforceability of this executive order. They do not allege, and nothing in the record suggests, that any development of the Transportation Parcel has occurred, or that there is a contract in existence or even a proposal in hand.

In their complaints, the plaintiffs allege the factual predicate to their contentions that they have standing to pursue these claims. Plaintiff Harlan Ivan McLaughlin alleges that he is a resident of Searsport and that he

> has been an avid user and protector of the natural resources and wild residents of Sears Island and her surrounding estuarine water complex since 1947. Mr[.] McLaughlin hiked the island and swam in the island's shadows with his grandparents and now enjoys those same activities with his own grandchildren. Mr[.] McLaughlin feels a strong responsibility to ensure our generation passes on the treasure that is Sears Island as a gift to future generations. The final agency action he seeks to be reviewed will irrevocably harm his ability to enjoy, use, steward and restore this area. . . .Mr. McLaughlin's freedom to enjoy the wilds of Sears Island will be irrevocably harmed if the final agency action is not invalidated and rescinded.

Complaint, AP-09-3 at ¶ 2.

Plaintiff Douglas H. Watts alleges in his complaint that he resides in Augusta. He further alleges that he

> has been an avid user of the Penobscot River and its tributaries near Sears Island since 1982. The final agency action he seeks to be reviewed will irrevocably harm his ability to continue using and enjoying the Penobscot River and these tributaries as he has done since 1982.

Complaint, AP-09-4 at ¶ 2.

Finally, in his complaint, plaintiff Ronald C. Huber alleges the following injury:

> Mr. Huber has been an avid user and protector of natural resources and wild residents of Sears Island and her surround estuarine water complex since 1992. Mr. Huber hikes the island and snorkels the island's shallows in communion with the natural residents he was charges in 1992 by Almighty God with stewarding and restoring; in particular the brackish water nurseries and diadromous fish shelter habitants surrounding Sears Island in Searsport Harbor, Long Cove and Stockton Harbor. The final agency action he seeks to be reviewed will irrevocably harm his ability to enjoy, use, steward and restore this area. . . .Mr. Huber's freedom to worship and carry out the will of Almighty God is protected under Article 1 Section 3 of the Maine Constitution; it will be irrevocably harmed if the final agency action is not invalidated and rescinded.

Complaint, AP-09-5 at ¶ 2.

In addition to Huber's allegations that his freedom of worship would be violated by the agency action, all three plaintiffs assert in their complaints that their standing is based on "aesthetic, environmental and recreational interests. . . ."

It is clear from these allegations that the injuries claimed by the plaintiffs would arise from the development of the Transportation Parcel. The plaintiffs purport to challenge the creation of the conservation easement, but they do so not because they claim the conservation easement itself harms their claimed interests. In fact, preservation of the land within the scope of the Protected Property is fully consistent with the nature of the interests on which they rely as a foundation for this action. Rather, they contest the creation of the conservation easement only because they view it as a prelude to the commercial development of the island, which would occur on the Transportation Parcel. Thus, although the plaintiffs attempt to argue that they have sustained a legally cognizable injury arising from the implementation of environmental protections to the Protected Property, the essence of the their claims is that their environmental and aesthetic interests, and, for Huber, his religious freedoms, would be damaged if a cargo/container port were constructed on the Transportation Parcel. The resulting question is whether they have sustained a legally recognized injury through the governmental creation of the conservation easement affecting the Protected Property and the adoption of a plan for commercial development of the Transportation Parcel. The court concludes that execution of the executive order has not created any injury that would give any of the plaintiffs standing to pursue the challenges they assert here.

4

In order to establish standing to pursue an appeal from governmental action, a party must demonstrate the infliction of a particularized injury. *See Friends of Lincoln Lake v. Town of Lincoln*, 2010 ME 78, ¶ 14, --- A.2d ---, ---. Such an injury "occurs when a judgment or order adversely and directly affects a person's property, pecuniary, or personal rights." *Id.*, --- A.2d at --- (citation and internal punctuation omitted). An injury sufficient to confer standing on a claimant must be more than abstract. *Collins v. State*, 2000 ME 85, ¶ 6, 750 A.2d 1257, 1260. Rather, a claim must present "a *real* and substantial controversy touching on the legal relations of parties with adverse legal interests." *Id.*, ¶ 5, 750 A.2d at 1260 (citation and internal punctuation omitted; emphasis added).

Here, the plaintiffs' allegations do not suggest that they have sustained an actual injury or face true exposure to such an injury in the future that would justify present judicial intervention. Rather, the record indicates only that the state is committed to market and then try to develop a commercial facility to be located on the Transportation Parcel. As is noted above, the development of the port, which is contemplated in the executive order, is the prospective harm alleged by the plaintiffs. However, that development, if it occurs, would be the culmination both of initial steps, such as marketing efforts, and of intermediate unfulfilled steps, such as the formulation of an actual plan for that development. As of the present, the plaintiffs' interests as described in their complaints have not been damaged. Further, on this record, such injury cannot be viewed as imminent. The controversy between the plaintiffs and the defendant is therefore not yet a "real" one.

The premature quality of the plaintiff's claims is further revealed by the fact that in the absence of information about an actual development plan, it would impossible to assess the nature and extent of any injury that the plaintiffs might claim would arise. The nature of an injury sufficient to confer standing is one "that is likely to be redressed through the judicial relief sought." *Collins*, 2000 ME 85, ¶ 6, 750 A.2d at 1260. Any effort to adjudicate the plaintiffs' claims now would rest wholly on a hypothetical and speculative assessment of future events that presently are unknown and of any effects flowing from those events. Because of this, even if the plaintiffs would be entitled to

judicial relief in the context of known circumstances, it would be impossible to craft such relief now.

In support of its motions to dismiss, the defendant makes further arguments, including a contention that any injuries alleged by the plaintiffs are not particularized. The court need not and therefore does not reach these remaining arguments because the record does not reveal the existence of any injury or damage, particularized or not, that would support a conclusion that the plaintiffs presently have standing to pursue their claims.

The entry shall be:

For the foregoing reasons, the defendant's motions to dismiss the complaints in these actions is granted. Each complaint is dismissed for lack of standing.

The defendant's motions to stay production of the record is dismissed as moot.

Dated: September 8, 2010

_____
Justice, Maine Superior Court