MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 61
Docket:      Ken-23-426
Argued:      May 8, 2024
Decided:     August 13, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

WILLIAM CLARDY et al.

v.

TROY D. JACKSON et al.

STANFILL, C.J.

[¶1]     William Clardy, Michelle Tucker, State Representative Shelley Rudnicki, State Representative Randall Greenwood, and nonprofit corporation Respect Maine brought suit against Senate President Troy D. Jackson, Speaker of the House Rachel Talbot Ross, and Governor Janet T. Mills seeking to invalidate the First Special Session of the 131st Legislature.  The Superior Court (Kennebec County, *Murphy, J.*) granted the defendants' motion to dismiss the complaint for failure to state a claim under M.R. Civ. P. 12(b)(6).  We affirm the dismissal, albeit on the ground that the plaintiffs lack standing.

## I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the plaintiffs, the complaint alleges the following facts.  *See Berounsky v. Oceanside Rubbish, Inc.*, 2022 ME 3,

¶ 2, 266 A.3d 284.  There are two regular sessions of each Maine Legislature. Me. Const. art. IV, pt. 3, § 1.  In addition to its regular sessions, the Legislature may meet in special sessions, which can be called in one of two ways.  *Id.*; Me. Const. art. V, pt. 1, § 13.  First, the Legislature may convene a special session by consent "on the call of the President of the Senate and Speaker of the House, with the consent of a majority of the Members of the Legislature of each political party, all Members of the Legislature having first been polled."  Me. Const. art. IV, pt. 3, § 1.  Second, "[t]he Governor may, on extraordinary occasions, convene the Legislature."  Me. Const. art. V, pt. 1, § 13.

[¶3]  With limited exceptions not relevant here, the Legislature has authority to control the agenda of its sessions and to adjourn each session *sine die*.[1]  *See* Me. Const. art. III, § 2; Me. Const. art. IV, pt. 3, § 1; 3 M.R.S. § 2 (2023).[2]

[¶4]  On March 30, 2023, during the First Regular Session of the 131st Legislature, the Maine Legislature considered L.D. 424 (131st Legis. 2023), the budget bill providing for approximately $10 billion in government appropriations and spending "for the Fiscal Years ending June 30, 2023,

---

[1] Adjournment *sine die*, or "without day," is the final adjournment of a legislative session.  *See Opinion of the Justices*, 2015 ME 107, ¶¶ 16 & n.3, 36-38, 123 A.3d 494.

[2] Title 3 M.R.S. § 2 has since been amended, though the amendments are not relevant in this case. P.L. 2023, ch. 446, § 1 (effective Oct. 25, 2023) (codified at 3 M.R.S. § 2 (2024)).

June 30, 2024, and June 30, 2025."[3]  The then-current fiscal year would end on June 30, 2023.  If no biennial budget for Fiscal Years 2024 and 2025 had taken effect by July 1, 2023, the government would have shut down on July 1.  *See* 5 M.R.S. § 1501 (2023).  Emergency legislation, which requires two-thirds majority legislative approval, takes effect immediately upon the Governor's approval.  *See* Me. Const. art. IV, pt. 3, § 16.  Non-emergency legislation does not take effect until ninety days after the Legislature adjourns *sine die*.  *Id.*  The budget bill lacked bipartisan support and therefore could not pass as emergency legislation.  *See id.*  Instead, it could garner only simple majority approval in the Legislature, and thus the Legislature had to vote on the bill and adjourn *sine die* by March 31 in order for a budget, and therefore funding for government operations, to be in place for the new fiscal year.  *See id.*; 5 M.R.S. § 1501.

[¶5]  Before both chambers had voted on the budget bill, the Speaker of the House polled the Legislature regarding convening in special session on April 5, 2023, by consent.  *See* Me. Const. art. IV, pt. 3, § 1.  A majority of the

---

[3] The bill provided the biennial budget for Fiscal Years 2024 and 2025 together with supplemental funding for Fiscal Year 2023.  *See* Comm. Amend. A to L.D. 424, No. H-12 (131st Legis. 2023).

4

members of one party voted against convening, and the Legislature therefore could not convene in special session on its own accord on April 5.

[¶6]  The Legislature then voted on the budget bill, which passed with a simple majority vote.  In addition, the Legislature passed a joint resolution to carry over all unfinished legislative business from the First Regular Session to the next special or regular session.  S.P. 594 (131st Legis. 2023).  Following motions from both chambers, the Speaker adjourned the First Regular Session *sine die*.  The Speaker, the Senate President, and other members of the Legislature expected that, despite the Legislature's adjournment and vote not to reconvene, the Governor would call the Legislature into a special session to resume unfinished legislative business.

[¶7]  As anticipated, the following day, Governor Mills signed the budget bill into law, P.L. 2023, ch. 17 (effective June 29, 2023), and issued a proclamation instructing the Legislature to convene in a special session.  The proclamation stated,

> WHEREAS, there exists in the State of Maine an extraordinary occasion arising out of the need to resolve many legislative matters pending at the time of the adjournment of the First Regular Session of the 131st Legislature of the State of Maine; and

> WHEREAS, the public health, safety and welfare requires that the Legislature resolve these pending matters as soon as possible, and in any event prior to the date of the Second Regular Session of the

131st Legislature of the State of Maine, including but not limited to the state budget, pending legislation, pending nominations of state board and commission members, and pending nominations of judicial officers by the Governor requiring legislative confirmation;

NOW, THEREFORE, I, JANET T. MILLS, Governor of the State of Maine, by virtue of the constitutional power vested in me as Governor pursuant to Article V, Part I, Section 13 of the Constitution of the State of Maine, do convene the Legislature of this State, and hereby request the Representatives to assemble at ten o'clock and the Senators to assemble at ten o'clock in the morning in their respective chambers at the Capitol in Augusta on Wednesday, April 5, 2023, in order to receive communications, resolve pending legislation carried over from the First Regular Session of the 131st Legislature and act upon pending nominations and whatever other business may come before the legislature.

*Proclamation of Governor Janet T. Mills Convening the Members of the 131st Legislature in Special Session*, Off. of Governor Janet T. Mills, https://www.maine.gov/governor/mills/official_documents/proclamations/2023-03-proclamation-governor-janet-t-mills-convening-members (last visited Aug. 9, 2024) [https://perma.cc/6N7K-29Z8]. In accordance with the proclamation, the Speaker and the President assembled the Legislature on April 5, 2023. The Legislature met eight times between April 5 and April 25 and voted on various matters carried over from the First Regular Session, including non-emergency laws; laws impacting spending, permitting rights, governmental services, and aid programs; and laws affecting taxpayer interests. The laws passed during the special session increased taxes and costs

6

for Maine people. Members of the Legislature who had voted not to convene a special session by consent were compelled to appear at each meeting to avoid bills passing without objection by vote of the majority party.

[¶8] On April 10, 2023, Maine citizen and taxpayer William Clardy and unnamed plaintiffs "1–600" filed a complaint in the Kennebec County Superior Court challenging the constitutionality of the special session. Two weeks later, Clardy, along with Maine citizen and taxpayer Michelle Tucker, State Representatives Rudnicki and Greenwood,[4] and nonprofit corporation Respect Maine filed an amended complaint containing two counts for declaratory and injunctive relief against Speaker Talbot Ross, President Jackson, and Governor Mills; this is the operative complaint. Count 1 alleged that the Governor's proclamation calling the Legislature into the special session was based on a "contrived" extraordinary occasion and was therefore not a constitutional exercise of her authority to convene the Legislature pursuant to Me. Const. art. V, pt. 1, § 13. Count 2 alleged that the Speaker and President violated separation of powers principles by "ceding Legislative power to the executive," convening the Legislature upon the Governor's call, and conducting legislative business

---

[4] The Representatives are also Maine citizens and taxpayers, and we assume they filed suit in their capacities both as individual citizens and as legislators.

during an unconstitutional session. The complaint sought declarations that the special session called by the Governor was unconstitutional and that legislation passed during the session was void.

[¶9] Speaker Talbot Ross, President Jackson, and Governor Mills moved to dismiss the amended complaint, arguing that the plaintiffs' claims were nonjusticiable, M.R. Civ. P. 12(b)(1), and that, because the defendants' actions did not violate the constitution, the amended complaint failed to state a claim upon which relief could be granted, M.R. Civ. P. 12(b)(6). Following oral argument on the motion, the court entered a judgment on October 13, 2023, dismissing the complaint. Without deciding whether the plaintiffs had standing, the court held that they had failed to state a claim because the Governor's determination that an extraordinary occasion existed to convene the Legislature is not subject to judicial review and Speaker Talbot Ross and President Jackson were immune from suit for their alleged conduct. The plaintiffs timely appealed. M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10] The plaintiffs argue that absent a true "extraordinary occasion," the Governor has no constitutional authority to convene the Legislature. In this case, they argue, the Governor's stated purpose of convening the Legislature to

8

complete unfinished legislative business from a prior session did not constitute an extraordinary occasion, rendering the session unconstitutional and a violation of separation of powers principles. The defendants argue that the Governor's determination of what constitutes an extraordinary occasion to convene the Legislature is not subject to judicial review; that legislative immunity precludes the plaintiffs' claims against Speaker Talbot Ross and President Jackson; and that the plaintiffs' claims are nonjusticiable because, among other things, the plaintiffs lack standing. We agree that the plaintiffs lack standing and therefore we do not reach the merits of their appeal.

[¶11] The Superior Court assumed, without deciding, that the plaintiffs have standing to challenge the validity of the Governor's proclamation and the special legislative session. The defendants have pressed the issue of standing in their arguments to us, and it has been fully briefed by both sides. We review standing de novo and may "raise the issue sua sponte," even if the parties have not raised it. *Black v. Bureau of Parks & Lands*, 2022 ME 58, ¶ 26, 288 A.3d 346.

[¶12] To sustain a claim for declaratory relief, a plaintiff must allege a justiciable controversy, *see Parker v. Dep't of Inland Fisheries & Wildlife*, 2024 ME 22, ¶ 13, 314 A.3d 208, and "a necessary element of justiciability is standing." *Smith v. Allstate Ins. Co.*, 483 A.2d 344, 346 (Me. 1984). "The

plaintiffs bear the burden of establishing standing, which is determined based on the circumstances that existed when the complaint was filed." *Black*, 2022 ME 58, ¶ 26, 288 A.3d 346. Maine's standing doctrine "has been applied in varying contexts causing it to have a plurality of meanings." *Roop v. City of Belfast*, 2007 ME 32, ¶ 7, 915 A.2d 966 (quotation marks omitted). Nonetheless, the hallmark of standing is the plaintiff's "personal stake in the outcome of the litigation." *Collins v. State*, 2000 ME 85, ¶ 5, 750 A.2d 1257 (quotation marks omitted).

[¶13] The complaint alleges that the plaintiffs fall into three categories. First, it alleges that the individual plaintiffs, including Rudnicki and Greenwood in their non-legislative capacity, are Maine citizens, taxpayers, and voters. Second, it alleges that Representatives Rudnicki and Greenwood are elected members of the 131st Legislature. Finally, it alleges that the organizational plaintiff, Respect Maine, is a nonprofit corporation whose members are Maine citizens and taxpayers. We address each category separately and conclude that each plaintiff lacks standing.

**A.    Individual Plaintiffs**

[¶14] The complaint alleges that bills passed during the special session called by the Governor increase taxes and other costs on Mainers, causing

ongoing harm to the individual plaintiffs. Additionally, the complaint alleges that the individual plaintiffs suffer injury because they are subject to laws passed during an unconstitutional session of the legislature that are at risk of being invalidated. The complaint thus alleges that the injury stems from the individual plaintiffs' statuses as taxpayers, citizens, and voters. We address whether the plaintiffs have adequately pleaded standing under any theory.

### 1. Traditional Standing

[¶15] Generally, "to have standing to seek injunctive and declaratory relief, a party must show that the challenged action constitutes" a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Madore v. Me. Land Use Regul. Comm'n*, 1998 ME 178, ¶ 13, 715 A.2d 157 (quotation marks omitted). Critically, the injury "must be distinct from the harm suffered by the public-at-large." *Collins*, 2000 ME 85, ¶ 6, 750 A.2d 1257.

[¶16] The plaintiffs argue that "members of the public writ large, undoubtedly affected by legislation passed during an extraconstitutional session, have standing to challenge the constitutionally repugnant legislative activity precipitating the governmental action." They rely on our decision in *Fitzgerald v. Baxter State Park Authority*, where we held that citizens and users

of Baxter State Park, who had "been substantial users of Baxter State Park and intend[ed] to use it substantially in the future," had standing to enjoin the Authority from carrying out a restoration project that would violate the Authority's trust obligations to maintain the land.  385 A.2d 189, 193, 197 (Me. 1978).  We concluded that the Park users had demonstrated "a direct and personal injury. . . to their interest in Baxter State Park." *Id.*

[¶17]  The *Fitzgerald* plaintiffs' direct interest in the proper maintenance of the Park, not their general interest in the proper function of government, conferred standing.  As we explained shortly after our *Fitzgerald* decision, a plaintiff's assertion "merely of the right, possessed by every citizen, to require that the Government be administered according to law . . . does not confer standing." *Heald v. Sch. Admin. Dist. No. 74*, 387 A.2d 1, 4 (Me. 1978) (quotation marks omitted).  To the contrary, "[b]eing affected by a governmental action is insufficient to confer standing in the absence of any showing that the effect is an injury." *Collins*, 2000 ME 85, ¶ 7, 750 A.2d 1257.

[¶18]  Accepting as true that the individual plaintiffs will be subject to laws passed during an unconstitutional legislative session, we conclude they have failed to allege any particularized injury.  Every Maine citizen will be subject to the same laws; there is no difference between the individual

12

plaintiffs' alleged injury and "the harm suffered by the public-at-large." *Id.* ¶ 6. They demonstrate no direct or personal interest, different from that of the general public, in the special session called by the Governor or in the legislation passed during it.

## 2. Taxpayer Standing

[¶19]  In limited circumstances, we have concluded that taxpayers have standing to contest unlawful government action. *See, e.g.*, *Common Cause v. State*, 455 A.2d 1, 13 (Me. 1983).  In *Common Cause*, we held that Maine taxpayers had standing to seek declaratory and injunctive relief in a claim challenging the allegedly unconstitutional use of tax funds. *Id.*  There, the plaintiffs asserted a "direct interest in the enforcement of a provision of the Maine Constitution which . . . is aimed precisely at protecting taxpayers from having their tax dollars used for private purposes." *Id.* at 10.

[¶20]  Here, in contrast, the individual plaintiffs allege only that legislation passed during the special session will increase their tax burden. They have not alleged that any legislation considered or passed during the special session is, on its own, unlawful, or that their tax dollars will be put to improper use. Moreover, the challenged actions—the Governor's proclamation convening the Legislature in special session and the Speaker and President's

assembling the Legislature—have no direct effect on taxpayer interests.[5] *Id.* (declining to decide that taxpayer standing exists "where the gravamen of the complaint is the alleged violation of a . . . constitutional provision having little or no direct connection with plaintiffs' tax liability"). Unlike the plaintiffs in *Common Cause,* the plaintiffs here have shown no direct connection between the asserted constitutional violation and their tax dollars. *See Collins*, 2000 ME 85, ¶ 9, 750 A.2d 1257 (rejecting claim of taxpayer standing where plaintiff alleged a constitutional violation having little direct connection with his tax liability because his tax dollars did not directly pay the challenged bond debt) The plaintiffs have not demonstrated taxpayer standing.

## B.  Representatives of the Maine Legislature

[¶21]  We next address whether Representatives Rudnicki and Greenwood have standing in their capacity as legislators. They allege they suffered harm because the defendants' conduct convening the special session compelled them to legislate, despite having voted not to convene and

---

[5] In *Common Cause v. State*, we stated that "[t]he chief argument against taxpayer standing . . . is that the acknowledgement of such standing opens a door to litigation over decisions made at the highest levels of state government." 455 A.2d 1, 9 (Me. 1983). Given the tenuous relationship between the individual plaintiffs' claimed injury and the Governor's proclamation convening the special session, this argument has considerable weight here. *See Black v. Bureau of Parks & Lands*, 2022 ME 58, ¶ 27, 288 A.3d 346 (recognizing that "this Court may limit access to the courts to those best suited to assert a particular claim" (quotation marks omitted)).

14

subsequently adjourning the First Regular Session *sine die*.[6]  They assert they "have a personal stake in being compelled to the Legislature" because, had they not appeared, the majority party would have "pass[ed] legislation without any objection whatsoever."

[¶22]  We have not previously determined whether members of the Legislature have standing generally to challenge government action.  *Black*, 2022 ME 58, ¶ 31, 288 A.3d 346; *cf. Me. Senate v. Sec'y of State*, 2018 ME 52, ¶ 25, 183 A.3d 749 ("Assuming without deciding that the Senate has standing" to seek a declaration of Secretary of State's constitutional authority to implement ranked-choice voting).  Without deciding the outer limits of the ability of legislators to maintain a suit for declaratory relief against government actors, we hold that the Representatives lack standing here because they have failed to meet the basic requirement that they assert an actual, concrete injury arising from the defendants' conduct.  *See, e.g.*, *Collins*, 2000 ME 85, ¶ 6, 750 A.2d 1257; *Turner v. Shumlin*, 163 A.3d 1173, 1178 (Vt. 2017) (requiring legislators to meet traditional standing requirements).

---

[6]  The plaintiffs' argument that the defendants "colluded" to adjourn the First Regular Session prematurely and convene, at the Governor's call, to continue unfinished legislative business adds nothing in the way of standing.

[¶23]  As we have said, standing requires that a plaintiff demonstrate a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Madore*, 1998 ME 178, ¶ 13, 715 A.2d 157 (quotation marks omitted).  The Representatives claim that the special session called by the Governor and carried out by the Speaker and President deprived the Representatives of the benefit of their votes not to reconvene and the Legislature's decision to adjourn the First Regular Session.  These allegations do not establish any injury because, although in reviewing the dismissal pursuant to M.R. Civ. P. 12(b)(6) we accept the facts alleged in the complaint as true, "we are not bound to accept the complaint's legal conclusions." *Collins*, 2000 ME 85, ¶ 4, 750 A.2d 1257 (quotation marks omitted).

[¶24]  Contrary to the allegations in the complaint, the Representatives' votes concerning convening by consent and the Legislature's adjournment of the First Regular Session were given full effect.  No special session was convened by consent, and the First Regular Session of the Legislature was in fact adjourned.  The Governor called the Legislature into the special session only after the First Regular Session had ended; the fact that she did so does not alter the validity and effect of the legislative votes.  There can be no question that her authority to convene the Legislature, irrespective of whether there

exists an "extraordinary occasion" to do so, is not conditioned on the Legislature's separate authority to convene itself in special session with the approval of a majority of the members of each political party. *See* Me. Const. art. V, pt. 1, § 13. Thus, the defendants' conduct could not and did not harm the Representatives' role in voting not to reconvene or in adjourning the First Regular Session. *See Jeffs v. Utah Power & Light Co.*, 12 A.2d 592, 600 (Me. 1940) ("A plaintiff, who can show no injury to himself by reason of the facts of which he complains, surely has no standing in court."); *Markham v. Wolf*, 136 A.3d 134, 145 (Pa. 2016) ("[Legislative] [s]tanding exists only when a legislator's direct and substantial interest in his or her ability to participate in the voting process is negatively impacted, or when he or she has suffered a concrete impairment or deprivation of an official power or authority to act as a legislator." (citations omitted)).

[¶25]  Once called into session by the Governor, the Legislature—as always—had the exclusive authority to adjourn immediately, to determine the agenda of the special session, or to vote not to pass any legislation. *See* Me. Const. art. III, pt. 1, § 2; Me. Const. art. IV, pt. 3, § 1. The Governor's proclamation did not compel the legislators to take any action.  Moreover, although the Speaker and President did not immediately seek to adjourn the special session,

the Representatives' claim that they were required to participate in the session to avoid bills that they opposed "passing with no objection whatsoever" is no more than a claim that they undertook their responsibilities as legislators seriously, as they presumably would in any legislative session.[7]  Because the Representatives failed to allege any concrete injury arising from the Governor's proclamation or the convening of the special session by the Speaker and President, the Representatives also lack standing.

## C.  Respect Maine

[¶26]  Finally, we note that Respect Maine also lacks standing because none of its members have standing.  The plaintiffs allege that Respect Maine is a nonprofit corporation "comprised of Maine residents, taxpayers, and members of the 131st Legislature, that advocates for responsible government." Associational standing exists if (1) the organization's members would have standing to sue individually, (2) the interests involved are germane to the organization's purpose, and (3) "neither the claim asserted nor the relief

---

[7]  To the extent that Speaker Talbot Ross and President Jackson can be said to have injured the Representatives by not immediately adjourning the special session called by the Governor, the Representatives still would not be entitled to relief.  Legislators acting within the "sphere of legitimate legislative activity . . . enjoy[] absolute common law immunity" from claims for declaratory and injunctive relief. *Lightfoot v. State of Me. Legislature*, 583 A.2d 694, 694 (Me. 1990).  Convening the Legislature and acting upon legislation, as the Speaker and President did, are activities within the constitutional sphere of legislative activity.  *See id.*; Me. Const. art. IV, pt. 3, § 1.  They are immune from the plaintiffs' suit.

requested requires the participation of individual members." *Black*, 2022 ME 58, ¶ 29, 288 A.3d 346. Because, as discussed above, the harm alleged in the complaint does not confer standing on individual plaintiffs, Respect Maine has not demonstrated that its members "have standing to sue in their own right." *Id.*

[¶27] Although the trial court in ruling on the motion to dismiss assumed the plaintiffs sufficiently alleged standing, we may affirm the trial court's order for reasons different from those the trial court relied on "when we determine, as a matter of law, that there is another valid basis for the judgment." *Yankee Pride Transp. & Logistics, Inc. v. UIG, Inc.*, 2021 ME 65, ¶ 11, 264 A.3d 1248; *see Fitch v. Doe*, 2005 ME 39, ¶ 21, 869 A.2d 722. Despite alleging that they are citizens, taxpayers, voters, and legislators, no plaintiff has suffered an injury sufficient to confer standing to bring this case.

The entry is:

Judgment affirmed.

Carl E. Woock, Esq. (orally), and Stephen C. Smith, Esq., Steve Smith Trial Lawyers, Augusta, for appellants William Clardy, Michelle Tucker, Shelley Rudnicki, Randall Greenwood, and Respect Maine

Aaron M. Frey, Attorney General, and Kimberly L. Patwardhan, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellees Troy D. Jackson, Rachel Talbot Ross, and Janet T. Mills

Kennebec County Superior Court docket number CV-2023-52
FOR CLERK REFERENCE ONLY