MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2021 ME 46
Docket:        Ken-20-308
Argued:        July 14, 2021
Decided:       September 28, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

MARINA NAROWETZ

v.

BOARD OF DENTAL PRACTICE

CONNORS, J.

[¶1]  Marina Narowetz appeals from a judgment of the Superior Court (Kennebec County, *Stokes, J.*) affirming a decision of the Board of Dental Practice sanctioning her for unprofessional conduct for her failure to timely provide patient medical records.  *See* M.R. Civ. P. 80C.  Because the Board issued factual findings that were insufficient to permit judicial review, we must remand the matter to the Board; and because the same assistant attorney general who advised the Board acted in an advocate capacity contrary to 5 M.R.S. § 9055 (2021), we remand for the Board to conduct a new evidentiary hearing.

## I. BACKGROUND[1]

[¶2]  Narowetz is a licensed dentist in Maine and has owned a dental practice in Old Orchard Beach since 2011.  On September 17, 2018, she provided a free dental consultation for a patient.

### A.    The Record Request

[¶3]  On September 25, 2018, attorney Neil Weinstein, who represented the patient, sent a request to Narowetz by mail for the patient's dental records. The record request was returned by mail and received by Weinstein's office on October 10, 2018.  On that same day, Weinstein hand-delivered the envelope containing the request to Narowetz's office.  The envelope was again refused and was mailed back to Weinstein's office.

[¶4]   Weinstein then filed a complaint with the Board on October 23, 2018, alleging that Narowetz had refused a request for patient

---

[1]  Because, as discussed *infra*, the Board did not make sufficient factual findings, we draw the factual background from the undisputed facts and the procedural record.  *See D'Alessandro v. Town of Harpswell*, 2012 ME 89, ¶¶ 2, 8, 48 A.3d 786; *Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 11, 252 A.3d 504.

records in violation of 32 M.R.S. § 18325(1)(E) (2021)[2] and the Board rule regarding record production.[3]

## B.      The Board's Review of the Complaint

[¶5]  The record reflects that the Board held a public meeting at which Assistant Attorneys General Andrew Black and Adria LaRose were present and for which Narowetz had received notice.  At the meeting, the Board considered whether to dismiss the complaint, offer a consent agreement, or set the matter for a hearing.[4]  A Board member made an initial presentation of the complaint against Narowetz to the rest of the Board.[5]  The Board flagged Narowetz's case

---

[2]  Title 32 M.R.S. § 18325(1)(E) (2021) provides: "Unprofessional conduct.  A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed or authorized by the board[.]"

[3] The Board rule provided:

> The failure of a dentist to surrender a copy of a patient's records upon appropriate request by the patient or the patient's agent and payment of a reasonable duplication cost.  This rule does not require a dentist to surrender original patient records.  The records should be released within five business days of receipt of the request and shall be released within 21 calendar days of receipt of the request.  Dentists shall maintain patient treatment records for a minimum of seven (7) years after the date on which the last dental services were provided to the patient.

02-313 C.M.R. ch. 9, § II(K) (effective June 27, 2010) (currently located at 02-313 C.M.R. ch. 12, § I(G)(3)(a) (effective Apr. 5, 2020); the substance of the rule has not materially changed).

[4] No rule promulgated by the Board of Dental Practice pursuant to the Administrative Procedure Act, 5 M.R.S. §§ 8001-11008 (2021), specifies the Board's process for reviewing complaints.

[5] That Board member recused himself from participating in Narowetz's subsequent hearing and did not take part in the Board's final decision.

4

for follow up with the Office of the Attorney General. Black was acting in an advisory capacity to the Board at this time.

[¶6] At that meeting, the Board voted to offer Narowetz a consent agreement "in order to resolve the complaint." The draft consent agreement sent to Narowetz included a space for LaRose to sign on behalf of the Attorney General's Office. The proposed consent agreement included sixteen findings of fact; stated that Narowetz admitted to the violation; and included as discipline a warning, a civil penalty of $1,500, and the requirement that Narowetz complete three hours of continuing education pertaining to ethics in the dental profession.

[¶7] Narowetz rejected the consent agreement and requested that the Board reconsider its disposition of the complaint. The Board, at Narowetz's request, reviewed Narowetz's case again in a meeting on March 15, 2019, with Black and LaRose in attendance and Black advising the Board. The Board arrived at the same result. Another consent agreement was then offered, this time with Black listed as a signatory on behalf of the Office of the Attorney General.[6]

---

[6] This Board meeting was held in open session but with no opportunity for Narowetz's counsel to participate.

[¶8] Narowetz again rejected the consent agreement, and the matter was scheduled for an evidentiary hearing before the Board. In the notice of hearing, the Board informed Narowetz that it had "contracted with a Hearing Officer who [would] advise the Board at the hearing and rule on procedural issues prior to hearing." The notice also stated:

> Pursuant to 5 M.R.S. § 9054(5), Board staff with the assistance of an assistant attorney general will facilitate the presentation of this matter to the Board by offering relevant evidence, examining witnesses, filing appropriate motions, and responding to motions and objections of the applicant.

[¶9] Immediately after receiving the notice of hearing, Narowetz filed a motion arguing that the Board could find that she had engaged in unprofessional conduct only if it made that finding by clear and convincing evidence. Black submitted an opposition to the motion on behalf of "the [p]rosecution," arguing that only a finding by a preponderance of the evidence was required. The hearing officer ruled on this motion after a pre-hearing conference and explained that he would "instruct the Board to apply the standard of 'proof by a preponderance of the evidence.'"

[¶10] The Board held its evidentiary hearing on June 14, 2019. At the start of that hearing, the hearing officer confirmed that he was "authorized to administer oath[s] and affirmations[,] to rule on any non-dispositive motions

6

[and] any objections to admissibility of evidence, . . . to regulate the course of the hearing[,] and to address any procedural matters that might arise . . . [and] serve as . . . the Board's legal advisor during the proceedings." Placing his previous ruling on the record, the hearing officer stated, "The State is not technically a party to the matter, but having assumed the role of a moving party on behalf of Board staff, the burden of proof at hearing is upon the State in the person of the Assistant Attorney General." The presiding officer thereafter referred to Black and the prosecution as "the State."

[¶11] At the start of the hearing, the Board ruled on a motion to dismiss previously filed by Narowetz, challenging the overlapping roles undertaken by the assistant attorneys general as violations of her right to due process and of sections of the Maine Administrative Procedure Act, including 5 M.R.S. § 9055. The Board denied the motion.

[¶12] During the evidentiary hearing, Black, with the assistance of a third assistant attorney general, presented the case that Narowetz had engaged in unprofessional conduct. Black submitted evidence, conducted direct and cross-examination, and made opening and closing arguments.[7] Narowetz was

---

[7] In the Board's subsequent written decision, it stated that the "Assistant Attorneys General undertook to present evidence on behalf of the Board's Staff, volunteering as the moving party to

represented by her own counsel, who presented evidence through direct and cross-examination in her defense and also made opening and closing arguments.

## C.     The Board's Decision and Subsequent Petition for Review

[¶13]  In its written decision, the Board found that Narowetz had engaged in unprofessional conduct as defined by Board rule, thereby violating 32 M.R.S. § 18325(1)(E).  The Board imposed the following sanction:

> A REPRIMAND; completion of continuing education courses of three (3) hours in ethics, and three (3) hours in record keeping, to be pre-approved by the Board's Complaint Officer and to be completed within ninety (90) days of the date of this decision and order, and not to be applied toward the biennial continuing education requirement; a civil penalty of $1,500, plus the cost of hearing not to exceed $3,000, both to be paid within ninety (90) days of the date of this decision and order; and a period of probation of five (5) years with the condition that the Licensee refrain from violation of the Dental Practice Act.

[¶14]  Narowetz filed in the Superior Court a petition for judicial review of final agency action pursuant to Rule 80C, along with three independent claims, seeking a declaratory judgment, injunctive relief, and a stay of the sanctions against her.  She subsequently filed a motion to take additional evidence to demonstrate bias on the part of three individual board members,

---

shoulder the burden of proof by a preponderance concerning the basis for imposing discipline alleged in the Notice of Hearing, and the hearing officer instructed the Board accordingly."

8

as well as additional evidence regarding "procedural irregularities," including "Assistant Attorney General Black acting as the investigator, counsel to the Board, and prosecutor in [the] case."

[¶15]  In a written order disposing of all pending motions, the court granted the Board's motion to dismiss Narowetz's independent claims, denied Narowetz's motion to stay sanctions, and denied her motion to take additional evidence.  In a judgment entered on November 12, 2020, the court upheld the Board's decision.  Narowetz timely appealed.  *See* 5 M.R.S. § 11008 (2021); M.R. App. P. 2B(c).

## II.  DISCUSSION

### A.  The Board's Factual Findings

[¶16]  "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record."  *Doane v. Dep't of Health & Hum. Servs.*, 2021 ME 28, ¶ 15, 250 A.3d 1101 (quotation marks omitted).

[¶17]  "[I]t is an indispensable prerequisite to effective judicial review that an agency's decision set forth the findings of basic fact as well as the conclusions of ultimate fact and conclusions of law derived therefrom."  *Gashgai*

*v. Bd. of Registration in Med.*, 390 A.2d 1080, 1085 (Me. 1978). "Recitation of the parties' positions or reiterations of the evidence presented by the parties do not constitute findings and are not a substitute for findings." *Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 37, 252 A.3d 504 (quoting *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 7, 769 A.2d 834).

[¶18] We have held that "[w]here express findings of fact are necessary these findings must at least state the ultimate facts which are essential to an administrative determination, and without such a finding the finding of the basic or evidentiary facts may be deemed insufficient." *Cumberland Farms N., Inc. v. Me. Milk Comm'n*, 234 A.2d 818, 820 (Me. 1967) (quotation marks omitted). The ultimate facts alone, however, are not enough; "[a] mere finding of ultimate facts, a finding solely in terms of the statute, or the statement of a conclusion, without a finding of the basic or underlying facts on which the administrative agency deems such ultimate fact or conclusion to rest, is, as a general proposition, regarded as insufficient to support a determination." *Id.* (quotation marks omitted).

[¶19] In its written decision, the Board's factual discussion begins with the caption "Review of Facts," followed by subsections with captions such as:

10

"Licensee's Original Testimony," "Bissonnette Testimony," and "Licensee's Corrected Testimony." The Board never makes clear in its decision which parts of this testimony it credited and which it did not.

[¶20] By merely summarizing the testimony, the Board did not make factual findings. The Board's decision and review of the facts allows for multiple interpretations of events, including whether, and to what extent, Narowetz attempted to deceive the Board. For example, the Board did not make a finding as to whether Narowetz knew that she received a record request containing a patient release and decided to ignore it, or whether she genuinely believed that the mail was related to a separate litigation matter. Although either explanation of her behavior might constitute a violation of the Board rule, one explanation of Narowetz's behavior may merit a more serious sanction than the other.[8]

[¶21] This omission in the Board's written decision is exacerbated by a lack of explanation as to why the Board imposed the sanction that it did—a

---

[8] The Board's deliberations suggest that the sanction imposed was based in part on a finding that Narowetz acted dishonestly and deliberately misled the Board during the hearing. But "an agency's action should be reviewed based upon what it accomplishes and the agency's stated justifications," not a review of the agency's deliberations. *Kan. State Network, Inc. v. Fed. Commc'n Comm'n*, 720 F.2d 185, 191 (D.C. Cir. 1983); *see also Widewaters Stillwater Co. v. Bangor Area Citizens Organized for Resp. Dev.*, 2002 ME 27, ¶¶ 9-12, 790 A.2d 597 (rejecting the proposition that statements in the record made by individual board members reflecting their individual opinions as to why they were voting as they did were sufficient findings of fact because those statements did not represent the collective judgment of the agency).

sanction substantially more severe than those contained in the proposed consent agreements. While one might speculate that the sanction was based on a factual conclusion that Narowetz had engaged in a cover-up of her failure to timely produce the records, continuing through her testimony at the hearing, the decision simply states, "At [the] hearing, Dr. Narowetz was not fully truthful in her initial sworn testimony about when she received the request for records, and about her involvement in the preparation of witness statements, but returned to the witness chair to correct it."

[¶22] Because the Board did not make sufficient factual findings, we are unable to properly review its decision, requiring us to remand the matter for the Board to articulate its findings and the basis for the sanction it imposed. *See Christian Fellowship & Renewal Ctr.*, 2001 ME 16, ¶ 19, 769 A.2d 834. Narowetz, however, raises additional claims that, if meritorious, would also require a new evidentiary hearing. Five of these claims we may dispose of summarily.[9] Her remaining argument, however, has merit.

---

[9] First, Narowetz argues that the hearing officer lacked the authority to provide legal advice to the Board. But she did not preserve this argument by raising the issue before the Board. *See Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 9, 60 A.3d 1248.

Second, Narowetz contends that the Board erred in considering her dishonesty, arguing that this violated her right to due process because such consideration required a separate charge in order to provide her with adequate notice that the dishonesty might be considered by the Board in this proceeding, rather than in a new complaint. Given the insufficiency of the factual findings, we do not know the extent to which the Board found her to be dishonest; however, the record reflects that any dishonesty that the Board considered was in the context of identifying an appropriate sanction, not

12

## B.    Commingling of Roles

[¶23]   Narowetz argues that the Board violated her procedural due process rights and 5 M.R.S. § 9055 by commingling the roles of investigator, prosecutor, and adjudicator.   Because we find that Black's participation as investigator, prosecutor, and advisor to the Board violated section 9055, we need not address the constitutional argument. *See Your Home, Inc. v. City of Portland*, 432 A.2d 1250, 1257 (Me. 1981) ("[W]e avoid expressing opinions on

---

as a separate act of professional misconduct.  If the Board did find that Narowetz was dishonest, it was free to take this into account when setting appropriate discipline.  The extent to which a licensee attempts to cover up or mislead regarding an act of unprofessional conduct reflects upon the gravity of that conduct, and thus the appropriate sanction for the same.  Narowetz was notified, prior to the hearing, of the sanctions that could be imposed based on the charged misconduct, which extended to the loss of her license and other sanctions more severe than those the Board chose to impose.

Third, citing *Balian v. Board of Licensure in Medicine*, 1999 ME 8, 722 A.2d 364, Narowetz argues that the Board was required to present expert witness testimony of the professional standard she was found to have violated.  In *Balian*, however, no Board rule specified that failure to provide records constituted unprofessional conduct and the Board did not introduce evidence—expert witness testimony or otherwise—to establish the standard of professional conduct. *Id.* ¶¶ 4-5, 12-15.  Here, the applicable rule, *see supra* n.3, makes the standard clear.  Moreover, the Board was not required to offer evidence establishing that a licensee has a duty to open mail containing a request for patient records or that a licensee is expected to testify honestly before the Board. *See Balian*, 1999 ME 8, ¶ 16, 722 A.2d 364 ("[W]here an act is blatantly illegal or improper, or where the licensee admits to a violation, the Board need not introduce record evidence to establish the necessary standard.").

Fourth, Narowetz argues that the Board erred in denying her motion to take additional evidence. The aspect of her motion seeking investigation into the assistant attorneys general's multiple roles is rendered moot by our ruling; the aspect of her motion asserting Board bias was not preserved because she failed to raise it before the Board, and none of the bases she cited for requesting to take the additional evidence was unknown to her at the time of the hearing.  She also filed no offer of proof with her motion, as required by M.R. Civ. P. 80C(e).

Finally, the independent claims were properly dismissed as duplicative. *See Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 7, 209 A.3d 102.

constitutional law whenever a non-constitutional resolution of the issues renders a constitutional ruling unnecessary.").

### 1.    Plain Language

[¶24]  "We interpret every statute de novo as a matter of law to give effect to the intent of the Legislature, first by examining its plain language."  *Reed v. Sec'y of State*, 2020 ME 57, ¶ 14, 232 A.3d 202 (quotation marks omitted). Section 9055 provides as follows:

> **§ 9055.  Ex parte communications; separation of functions**
>
> **1.  Communication prohibited**.  In any adjudicatory proceeding, no agency members authorized to take final action or presiding officers designated by the agency to make findings of fact and conclusions of law may communicate directly or indirectly in connection with any issue of fact, law or procedure, with any party or other persons legally interested in the outcome of the proceeding, except upon notice and opportunity for all parties to participate.
>
> **2.  Communication permitted.**  This section shall not prohibit any agency member or other presiding officer described in subsection 1 from:
>
> > **A.** Communicating in any respect with other members of the agency or other presiding officers; or
> >
> > **B.** Having the aid or advice of those members of his own agency staff, counsel or consultants retained by the agency *who have not participated and will not participate in the adjudicatory proceeding in an advocate capacit*y.

(Emphasis added.)

14

[¶25]  The plain language of this section of the Maine Administrative Procedure Act mandates that, in any case to be decided by a board, board members shall not be advised by the same legal counsel who will subsequently act in an advocate capacity in the same matter.  If an assistant attorney general gives advice *to* a board relating to the merits of a complaint, he or she should not then prosecute the charge based on that complaint *before* the board.

## 2.  Legislative History and Purpose

[¶26]  Although the plain language of this section is not complex, we understand from oral argument that the current practice of assistant attorneys general staffing Maine's boards and agencies may differ from what the statute requires.  "Although it is unnecessary to look at the legislative history because the plain language elucidates the Legislature's intent, we note that the history supports the intent stated in the plain language."  *Stockly v. Doil*, 2005 ME 47, ¶ 12, 870 A.2d 1208.

### a.  Legislative History

[¶27]  The Legislature stated that section 9055 was "considered to be among the most vital in the proposed [Administrative Procedure Act], both because off the record communications between decision-makers and advocates are so likely to be prejudicial to those parties not present, and

because many of Maine's administrative agencies are so small that the problem occurs frequently." L.D. 1768, cmt., § 9055 (108th Legis. 1977).

[¶28] Before the Maine Administrative Procedure Act was passed into law, a 1974 draft version of the bill included the following language: "this section shall not prohibit any agency member or other presiding officer described in the first sentence of this section from . . . having the aid and advice of agency staff, counsel for the agency, or the Department of the Attorney General." L.D. 1768, Draft Administrative Procedure Act, § 2504(2)(B) (Dec. 5, 1974). This proposed language was not adopted, however, and in its place the current version, which allows the agency to seek only the aid of outside counsel "*who have not participated and will not participate in the adjudicatory proceeding in an advocate capacity,*" was enacted. 5 M.R.S. § 9055(2)(B) (emphasis added). This change to the proposed legislation shows that the Legislature considered and rejected the proposition that the same assistant attorneys general could advise members of an agency and later advocate a position before that agency.[10]

---

[10] Because the Maine APA "roughly mirrors" the federal APA, the federal Act can offer "useful guidance." *Me. Sch. Admin. Dist. No. 27 v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 108, ¶ 13, 983 A.2d 391. The federal APA precludes employees or agents engaged in the performance of investigative or prosecuting functions for an agency in a case from participating or advising in the decision, recommended decision, or agency review, with certain exceptions. 5 U.S.C.S. § 554(d)(2) (LEXIS through Pub. L. 117-36, approved Aug. 6, 2021, excepting part V of Subtitle A of Tit. 10, as added by

### b. Purpose

[¶29] An important goal of an administrative procedure act is not only to provide a fair mechanism for regulatory conduct but to instill public confidence in the same. *See Wong Yang Sung v. McGrath,* 339 U.S. 33, 42 (1950) (referring to the legislative history of the federal APA, which noted that a lack of separation of function between prosecutor and judge "not only undermines judicial fairness; it weakens public confidence in that fairness" (quotation marks omitted)); *Amos Treat & Co. v. Sec. Exch. Comm'n*, 306 F.2d 260, 267 (D.C. Cir. 1962) (stating that an administrative hearing must be attended "not only with every element of fairness but with the very appearance of complete fairness"); *Nightlife Partners, Ltd. v. City of Beverly Hills*, 133 Cal. Rptr. 2d 234, 243 (Cal. Ct. App. 2003) ("One of the basic tenets of the [California] APA, as well as the Model State Administrative Procedure Act, various state administrative procedure acts, and the federal Administrative Procedure Act is that, to promote both the appearance of fairness and the absence of even a probability of outside influence on administrative hearings, the *prosecutory* and, to a lesser

---

Pub. L. 116-283 (effective 1/1/2022)).  The Model State Administrative Procedure Act similarly requires a separation of functions.  *See* Model State Admin. Proc. Act § 4-214(a), 15 U.L.A. 94 (2000).

extent, investigatory, aspects of administrative matters must be adequately separated from the adjudicatory function." (emphasis in original)).

[¶30]  A licensee coming before a board to face potentially severe discipline might question the legitimacy of an adjudicatory proceeding where the lawyer presenting the prosecution's case is the same lawyer who acted in an advisory capacity to the board in the same matter.  Without impugning the integrity of any member of the Office of the Attorney General, who we have no reason to suspect was not performing in accordance with the highest ethical standards, this multiplicity of roles can undermine the confidence of the parties and the public in the regulatory process.

[¶31]  Lack of transparency increases concerns about appearance.  The licensee in a disciplinary hearing can only speculate as to the scope and content of prior communications, direct or indirect, that might have taken place between the board and an assistant attorney general acting in an advisory capacity and the effect such communications might have when that same assistant attorney general appears at the evidentiary hearing in the role of advocate against the licensee's position.[11]  *See Mutton Hill Est., Inc. v. Town of*

---

[11]  It is unclear from the record whether Black in fact engaged in any direct or indirect communications with the Board outside public hearings prior to the evidentiary hearing where he appeared in an advocate capacity.  The Board has no rule setting forth its procedures.  The record contains various emails to and from Black with contents redacted.  The record cannot capture oral

*Oakland*, 468 A.2d 989, 992 (Me. 1983) (holding that the Superior Court correctly vacated a board's order when a board carried out an ex parte session with opponents to an application because the influence of the opponents in the ex parte session on the board's fact finding could not be determined from the record).

[¶32]  While we take no position as to whether a commingling of the advisory function with the investigatory and prosecutorial functions can rise to the level of a constitutional violation, at least a few other jurisdictions have so concluded.  *See Lyness v. Pa. State Bd. of Med.*, 605 A.2d 1204, 1210 (Pa. 1992); *Horne v. Polk,* 394 P.3d 651, 659 (Ariz. 2017).  We construe statutes to avoid constitutional concerns when possible, *see State v. Davenport*, 326 A.2d 1, 5-6 (Me. 1974), and we presume that the Legislature similarly seeks to avoid constitutional problems when enacting statutes.  *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 549 (Me. 1986) (McKusick, C.J., dissenting) ("[B]y an established canon of statutory construction, legislators are presumed to avoid constitutional problems.").

---

communications, and Narowetz's attempt to probe the issue by calling Black and other Board staff as witnesses at the evidentiary hearing was rejected.  But regardless of whether any ex parte communications in fact occurred, our inability to confirm that no ex parte communication directly or indirectly influenced the Board's adjudication underscores the prudence of the separation of functions mandated by section 9055.

[¶33]  In sum, given the language, purpose, and history of section 9055, along with constitutional considerations, we conclude that the intent of the Legislature in enacting the statute was, consistent with legislatures enacting administrative procedure acts elsewhere, to segregate the advisory function from the investigatory and advocacy functions in adjudicatory matters before state agencies.[12]

---

[12]  Ordinarily, if legislative intent is not clear based on a statute's language, purpose, and legislative history, we defer to a reasonable construction of a statute offered by the agency administering the statute.  *See SAD 3 Educ. Ass'n v. RSU 3 Bd. of Dirs.*, 2018 ME 29, ¶ 14, 180 A.3d 125.  As noted, given the language, purpose, and history of section 9055, we find that the Legislature intended to separate the functions of those giving legal advice to an agency and those advocating before the agency.  Even if there were some ambiguity, however, the Board (represented by Black) did not respond to Narowetz's section 9055 argument in its brief before us.  Hence, there is no clearly articulated agency position to which we could defer.  *See Verizon v. Fed. Commc'n Comm'n*, 740 F.3d 623, 658-59 (D.C. Cir. 2014) (rejecting deference to a position asserted by an agency for the first time at oral argument).

At oral argument, Black stated that because he was representing Board staff's position at the evidentiary hearing, and Board staff do not fall within the definition of a party contained in 5 M.R.S. § 8002(7) (2021), section 9055 does not apply.  The Board and the hearing officer, however, considered Black to be representing a "party."  Further, section 9055(2) does not limit separation of functions based on technical party status but instead segregates the function of those acting in an "advocate capacity" from those providing advice.

In addressing Narowetz's constitutional argument, the Board asserted in its brief that the issuance of the consent agreement did not involve fact finding by the Board; the role of the assistant attorneys general was simply to advise the Board as to the universe of options from which the Board could choose; and because Black never advocated discipline, his role was not that of a prosecutor.  But while the Model State Administrative Procedure Act provides that "[a] person who has participated in a determination of probable cause or other equivalent preliminary determination in an adjudicative proceeding may . . . assist or advise a presiding officer in the same proceeding, unless a party demonstrates grounds for disqualification," Model State Admin. Proc. Act § 4-214(c), 15 U.L.A. 94 (2000), section 9055 contains no such provision.  *See* 5 M.R.S. § 9055 (2021).  The offer of the consent agreement, moreover, even if it could not be characterized as a preliminary determination, included fact finding and involved a degree of judgment by the Board as to the terms and discipline it would impose.  This raises the same concerns regarding separation of function as with ultimate decision making.  The Board, with Black providing advice to it, made a collective decision that the complaint should not be dismissed for lack of merit, that the factual underpinnings of the complaint had validity, that the facts as found in the agreement constituted unprofessional conduct, and that the sanction for

### 3.     The Scope of Section 9055's Restrictions

[¶34]  The separation of the advocacy function mandated by section 9055 does not preclude the entire Office of the Attorney General from having individual assistant attorneys general perform different roles.  *See Superintendent of Ins. v. Att'y Gen.*, 558 A.2d 1197, 1201-02 (Me. 1989) (assistant attorneys general are not subject to the same conflict-of-interest rules as other attorneys); *see also Mallinckrodt LLC v. Littell*, 616 F. Supp. 2d 128, 143 (D. Me. 2009) (noting that the Attorney General has sufficient personnel to maintain a firewall and avoid the appearance of bias).  In this instance, for example, three assistant attorneys general participated in the case and could have divided up the separate functions among them in a manner that would have avoided the overlap of the advisory function with the investigatory and prosecuting functions.

---

that misconduct was appropriate.  The consent agreement required Narowetz to admit that her conduct gave rise to grounds for imposing discipline against her for engaging in unprofessional conduct, and, if accepted, the agreement would have constituted a final and unappealable decision.

Finally, to the extent that the Board argues that Black never acted in an advocate capacity, this argument ignores reality.  Black signed an opposition on behalf of "the prosecution" and vigorously challenged Narowetz's position that she should not be disciplined.  The hearing officer perceived Black as arguing the "State's" position.  By any practical understanding of the concept, Black acted in an advocacy capacity in support of a finding of misconduct and imposition of discipline.

The entry is:

> Judgment vacated. Remanded to the Superior Court with instructions to remand to the Board of Dental Practice for further proceedings consistent with this opinion.

---

Janna L. Gau, Esq. (orally), Eaton Peabody, Bangor, for appellant Marina Narowetz

Aaron M. Frey, Attorney General, and Andrew L. Black, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Board of Dental Practice

Kennebec County Superior Court docket number AP-2019-43
FOR CLERK REFERENCE ONLY