MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2026 ME 27
Docket:      Ken-25-104
Argued:      November 14, 2025
Decided:     March 17, 2026

Panel:        MEAD, CONNORS, and LAWRENCE, JJ., and HJELM, A.R.J., and HUMPHREY, A.R.J.

DR. DOE

v.

BOARD OF DENTAL PRACTICE et al.

MEAD, J.

[¶1]  Dr. Doe[1] appeals from a judgment entered in the Superior Court (Kennebec County, *Lipez, J.*) determining that the Board of Dental Practice and eleven individuals were entitled to qualified immunity from Doe's 42 U.S.C.A. § 1983 (Westlaw through Pub. L. No. 119-73 (excluding Pub. L. No. 119-60)) claims against them.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the procedural record and the allegations contained in Doe's second amended complaint, which we accept as

---

[1]  Pursuant to confidentiality provisions of 10 M.R.S. § 8003-B(1) (2025), we refer to the plaintiff by a pseudonym.

2

true for purposes of our analysis. *Weinle v. Est. of Tower*, 2025 ME 62, ¶ 2, 340 A.3d 66; *Collins v. State*, 2000 ME 85, ¶ 4, 750 A.2d 1257.

[¶3]  Starting in 2016, the Maine Board of Dental Practice received eighteen patient complaints against Doe.  The Board then formed a "complaint committee," which included the Board's executive director, Penny Vaillancourt. The committee investigated the complaints by reviewing the complaints, inspecting Doe's office, reading Doe's responses to the complaints, and reviewing practice records that Doe submitted.  On February 10, 2017, the committee presented the initial results of the investigation to the full Board. After completing a review of the results of the investigation, the Board imposed a thirty-day suspension of Doe's license to practice dentistry in Maine.

[¶4]  The preliminary findings in the suspension order stated that, on numerous occasions, Doe failed to appropriately assess patient pain; continued to perform painful dental procedures when a patient asked him to stop; failed to address patient anxiety, fear, and pain; failed to monitor and document significant incidents and the administration of sedation; failed to select appropriate medications and medication dosages; failed to create adequate patient records; aided and abetted the unlicensed practice of dentistry by allowing dental assistants to perform functions outside their scope of practice;

failed to adequately store potentially infectious medical waste; extracted the wrong teeth; and engaged in other inappropriate or inadequate actions that adversely affected his patients.

[¶5]  The thirty-day temporary suspension order took effect on February 16, 2017, and included a notification to Doe that he would have the opportunity to contest the Board's findings at a public hearing prior to the expiration of the license suspension imposed by the order.  A hearing was not held within thirty days, however, and so the temporary suspension order lapsed pursuant to its own terms on March 18.

[¶6]  On February 21, 2017, Doe filed a Rule 80C petition for judicial review of the temporary suspension.  *See* M.R. Civ. P. 80C.  Doe amended his complaint on June 30, 2017.  A further amended complaint—which was the second and the operative pleading here—alleged that the Board issued the order without giving Doe a meaningful opportunity to participate in the process, rebut the findings, or contest the allegations.  The complaint also asserted a 42 U.S.C.A § 1983 claim alleging that the Board failed to make any findings of an emergency situation and that Vaillancourt improperly comingled roles in the investigation, prosecution, and presentation of the complaints

against Doe.[2]  The § 1983 claim was brought against the individual members of the Board and Vaillancourt as the Board's executive director, in both their official and individual capacities.

[¶7]  Between September and December 2017, the Board held a hearing on five of the eighteen patient complaints.  On December 29, 2017, the Board concluded that the State had failed to meet its burden regarding the allegations on the five patient complaints and granted Doe's renewed motion to dismiss them.  The Board then voted on March 9, 2018, to refer the remaining thirteen complaints to the District Court.

[¶8]  In this action, on December 9, 2024, the Superior Court dismissed Doe's § 1983 claims, concluding that the Board is entitled to sovereign immunity, that all official-capacity claims for damages are barred by sovereign immunity, that any claims for injunctive relief are nonjusticiable, and that all claims for monetary damages brought against individual defendants in their personal capacities are barred by qualified immunity.  The court's order also disposed of the claims for declaratory and injunctive relief.  *See supra* n.2.  The parties stipulated to a dismissal with prejudice of the remaining count, which was the Rule 80C appeal.  Pursuant to the stipulation, the Superior Court

---

[2]  The complaint also asked the court for a declaratory judgment and injunctive relief.  The trial court dismissed those counts, and they are not at issue on this appeal.

(*Daniel Mitchell, J.*) dismissed that count on February 21, 2025, resulting in a final judgment on the complaint. Doe timely appealed the decision regarding the § 1983 claims for damages against the defendant officials in their personal capacities on February 28, 2025. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶9] "Review of a dismissal pursuant to M.R. Civ. P. 12(b)(6) accepts the facts as presented in the complaint as true. Nevertheless, we are not bound to accept the complaint's legal conclusions. Nor do we have to accept the Superior Court's decisions of law that buttress a dismissal under Rule 12(b)(6); these are reviewed de novo." *Collins*, 2000 ME 85, ¶ 4, 750 A.2d 1257 (citations and quotation marks omitted).

[¶10] "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[3] *Plumhoff*

---

[3] Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*v. Rickard*, 572 U.S. 765, 778 (2014) (quotation marks omitted). Qualified immunity protects state officers except for those "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). We have previously held that "an action's unlawfulness can be apparent even though that action has not previously been held to be unlawful. We focus on the objective reasonableness of the official's conduct, not on whether the plaintiff actually suffered a violation of his or her rights." *Andrews v. Dep't of Env't Prot.*, 1998 ME 198, ¶ 12, 716 A.2d 212 (citation omitted).

[¶11] "Whether a public official is entitled to qualified immunity is a question of law." *Id.* ¶ 13. The test to determine if an official is entitled to qualified immunity requires a court to decide (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional or federal statutory right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address either prong of the analysis first, and qualified immunity may be based on a negative determination on either one. *Id.* at 232-36.

**A.** **The individual respondents are entitled to qualified immunity on the § 1983 claim because there was no violation of a constitutional or federal statutory right.**

[¶12]  Doe argues—and the Board agrees—that his professional license is a property interest protected by the Fourteenth Amendment.  Doe further contends that, under the circumstances presented here, the Board was required to hold a fair and impartial hearing before suspending or revoking his license.  Doe asserts that Vaillancourt's actions in conducting the investigation,[4] and the Board members' participation in the decision to suspend his license without a

---

[4] Doe argues that the right to an impartial decision maker and protection against impermissible commingling of investigatory, prosecutorial, and adjudicatory functions in a proceeding to suspend a professional license was a clearly established constitutional right at the time of Vaillancourt's conduct and cites *Narowetz v. Board of Dental Practice* as precedent.  2021 ME 46, ¶ 23, 259 A.3d 771.

*Narowetz* was decided in 2021, four years after Doe's license was suspended, so it was not controlling law when the facts that gave rise to this case occurred.  Further, in that case, we declined to resolve the open question of whether the actions by the state official in *Narowetz* rose to a constitutional violation.  *Id.* at ¶ 32.  As a result, *Narowetz* could not provide any clearly established constitutional right that would be relevant to the facts here, and we do not discuss it further.

Regarding Vaillancourt's actions, given her role as executive director, it was not improper for her to undertake an assertive and zealous approach to investigating this matter.  Further, there are no allegations and there is no evidence in the record suggesting that Vaillancourt acted with a personal vendetta against Doe, misrepresented evidence or complaints, or acted in such a way that would call the entire investigation into question.  Vaillancourt's actions did not violate Doe's constitutional rights, and she is entitled to qualified immunity.

pre-deprivation hearing and without a true emergency, violated his due process rights.

### 1.   The Board's actions were authorized by statute.

[¶13]  "If a statute is within the legitimate range of the police power, has a fair tendency to accomplish the end proposed, is not unjustly discriminative, and does not destroy nor despoil a particular class, courts should not declare it unreasonable merely because they consider it impolitic or because it will operate harshly upon some individuals.  The necessity for the statute and the manner of its enforcement are fundamentally legislative, not judicial, questions."  *Ace Tire Co., Inc. v. Mun. Officers of Waterville*, 302 A.2d 90, 95 (Me. 1973).  "The court is bound to assume that, in the passage of any law, the Legislature acted with full knowledge of all constitutional restrictions and intelligently, honestly and discriminatingly decided that they were acting within their constitutional limits and powers.  That deference is further expressed in the presumption of constitutionality that we accord Maine statutes."  *In re Guardianship of Chamberlain*, 2015 ME 76, ¶ 8, 118 A.3d 229 (citation and quotation marks omitted); *see Warren v. Mun. Officers of Gorham*,

431 A.2d 624, 627–28 (Me. 1981) ("[An] ordinance passed in pursuance of statutory authority is presumed to be constitutional.").

[¶14]  The applicable statute permits the Board to suspend, revoke, or refuse to issue a license in the case of incompetence in the practice, unprofessional conduct, or aiding or abetting unlicensed practice.  32 M.R.S. § 18325(1)(D)-(E), (H) (2017).[5]  Further, the Board is explicitly allowed to suspend a license "*without proceedings* . . . when . . . [t]he health or physical safety of a person . . . is in immediate jeopardy at the time of the agency's action . . . provided that the revocation, suspension or refusal to renew shall not continue for more than 30 days."  5 M.R.S. § 10004(3) (2017) (emphasis added).[6]

[¶15]  In Doe's case, the Board had received eighteen patient complaints alleging neglectful practices such as removing the wrong teeth; unnecessarily exposing a pregnant woman to harmful radiation; inadequately storing

---

[5] Title 32 M.R.S. § 18325 has since been amended through not in any way that affects this appeal. *See* P.L. 2017, ch. 210, § J-1 (effective Nov. 1, 2017) (codified at 32 M.R.S. § 18325(1-A) (2025)); P.L. 2021, ch. 134, §§ 1-3 (emergency, effective June 10, 2021) (codified at 32 M.R.S. § 18325(1)(O)-(Q) (2025)); P.L. 2023, ch. 17, §§ P-19 to P-21 (effective June 29, 2023) (codified at 32 M.R.S. § 18325(1)-(2) (2025)); P.L. 2023, ch. 515, § 2 (emergency, effective Feb. 29, 2024) (codified at 32 M.R.S. § 18325(3) (2025)).

[6] Doe conceded during oral argument that 5 M.R.S. § 10004 itself was not facially unconstitutional but rather argued that it was unconstitutional as applied to him.

Title 5 M.R.S. § 10004 has since been amended though not in any way that affects this appeal. *See* P.L. 2021, ch. 349, § 1 (effective Oct. 18, 2021) (codified at 5 M.R.S. § 10004(3) (2025)).

10

potentially infectious medical waste; performing procedures without gloves; inappropriately restraining patients; aiding and abetting the unlicensed practice of dentistry; and failing to provide patients with appropriate post-surgery care, occasionally requiring patients to seek emergency help.

[¶16]  While the investigation had been going on for almost a year, there were ongoing and immediate threats to the public that the Board reasonably concluded should warrant a suspension of Doe's license.  Doe stated that he had to cancel thirty-two scheduled appointments upon notice of his suspension and that from March 2016 until February 2017, he had seen around 2,550 patients. Even if the Board did not explicitly state that the suspension was predicated upon an emergency, it is patently obvious from the facts alleged and the Board's preliminary findings that the Board could have reasonably and appropriately believed that any further delay in the suspension could have put patients in danger, thus constituting an emergency in the form of "immediate jeopardy" to his patients.

[¶17]  Given the seriousness of the allegations coupled with the nature of dentistry, it was reasonable for the Board to conclude that the physical health and safety of the public was in immediate jeopardy.  As a result, the Board acted

within its rights and prerogatives pursuant to 32 M.R.S. § 18325 and 5 M.R.S. § 10004.

### 2. Federal case law and Maine case law confirm the constitutionality of similar statutory provisions.

[¶18]  "A fundamental requirement of due process is the opportunity to be heard.  It is an opportunity which must be granted at a meaningful time and in a meaningful manner."  *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citation and quotation marks omitted).  "Due process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as some form of hearing is provided before an individual is finally deprived of the property interest."  *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (alterations and quotation marks omitted).

[¶19]  Along with the Supreme Court, we have previously held that the termination or suspension of other property interests, like the temporary seizure of a firearm or the termination of disability benefits, does not require a prior hearing under due process.  *See In re Weapons Restriction of J.*, 2022 ME 34, ¶¶ 16-21, 276 A.3d 510; *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976).

[¶20]  Other federal courts have upheld the constitutionality of similar regulations applicable to medical providers and health workers.  *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 14 (1st Cir. 2011) (concluding that

the Puerto Rico Board of Medical Examiners' decision to suspend a doctor's license in accordance with a new regulation and without a pre-deprivation hearing did not violate due process because "the license suspension was at that point provisional (not final), . . . the balance of the private and public interests involved favored immediate action, and . . . the risk of an erroneous deprivation was very small"); *see also Mackey v. Montrym*, 443 U.S. 1, 18-19 (1979) (concluding that a Massachusetts statute that mandated the suspension of a driver's license in the event of the driver's refusal to take a breath-analysis test, but allowed an immediate hearing at any time after surrendering the license, did not violate the due process clause); *Evans v. Rhodes*, 735 F. App'x 986, 987-90 (11th Cir. 2018) (concluding that a Florida statute allowing the Florida Department of Highway Safety and Motor Vehicles to suspend a person's driver's license for failure to pay court costs without affording a pre-suspension hearing did not violate due process).

[¶21] The constitutionality of 5 M.R.S. § 10004 is further bolstered by the provision that requires the Board to act within thirty days of the suspension and allows the affected person to seek a hearing to address the suspension.[7] The statutory process that the Board followed in suspending Doe's license

---

[7] Doe elected to forgo the expedited process provided by statute and instead filed a Rule 80C petition. This undeniably created a lengthier process.

contains procedural safeguards to protect against erroneous decisions by reviewing complaint submissions, reviewing the responses to the complaints, reviewing practice records, and providing an opportunity to contest the findings at a prompt public adjudicatory hearing.

[¶22] The Board's actions were entirely within the scope permitted by 5 M.R.S. § 10004(3). The statute itself is constitutional because it provides a limited thirty-day effective suspension period and the opportunity to contest the findings within that thirty-day window. We have confirmed the constitutionality of similar statutes, and the statute at issue here is well in accord with federal courts' rulings on similar statutory provisions. Accordingly, none of the allegations of the Complaint constitute a due process violation; the defendants are entitled to qualified immunity.

## B. The individual defendants are alternatively entitled to qualified immunity for the § 1983 claim because there was no clearly established right.

[¶23] "Qualified immunity is meant to protect government officials where no . . . red flags are flying." *MacDonald v. Town of Eastham*, 745 F.3d 8, 15 (1st Cir. 2014). "To render a government official's claim of qualified immunity inert, 'existing precedent must have placed the statutory or

constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[¶24] "In order to determine that a right is clearly established . . . the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. It is not necessary, however, for the action in question to have been previously held to be unlawful." *Struck v. Hackett*, 668 A.2d 411, 416 (Me. 1995) (quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Richards v. Town of Eliot*, 2001 ME 132, ¶ 25, 780 A.2d 281 (quotation marks omitted).

[¶25] Doe has not provided any case law holding that a *temporary* suspension (thirty-days) of a professional license without a pre-deprivation hearing has been found to be unconstitutional. Instead, Doe argues that a reasonable state official would have understood that suspending a professional license in the circumstances without a prior hearing and without demonstrating immediate jeopardy is a violation of the Fourteenth Amendment.

[¶26]  We have never issued a ruling that explicitly holds that there is a constitutional right to be free from disciplinary actions such as the Board undertook in this matter.[8]  Similarly, there exists no statutory provision placing a reasonable public official on notice that his or her conduct, as occurred here, violated a law or constitutional right.  As a result, it could not have been clear to any of the individual respondents that their conduct was unlawful in the situation they confronted.

[¶27]  Given that none of the allegations in the complaint indicate a due process violation in the first place, and that there was no clearly established right to be free from the defendants' alleged conduct, the Board members and Vaillancourt are entitled to qualified immunity from the § 1983 claim.[9]

The entry is:

Judgment affirmed.

---

[8]  The right to a fair and unbiased hearing before an administrative board was and is clearly established law. *Lane Const. Corp. v. Town of Washington*, 2008 ME 45, ¶ 29, 942 A.2d 1202. However, we have not ruled on what actions would deprive a party of this entitlement.

[9]  The defendants also allege that we could affirm the dismissal on the alternative grounds of quasi-judicial immunity.  Given that the Board members are protected by qualified immunity, we do not reach the defendants' claims of quasi-judicial immunity.

Jeffrey T. Edwards, Esq. (orally), Christopher S. Knight, Esq., and Tiffany J. Ottenga, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellant Dr. Doe

Aaron M. Frey, Attorney General, and Paul E. Suitter, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Board of Dental Practice

Martin J. Ridge, Esq., Beagle, Thomas & Ridge, LLC, Portland, for appellees Penny Vaillancourt and Nancy Foster

Kennebec County Superior Court docket number AP-2017-11
FOR CLERK REFERENCE ONLY